UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JAMES KENNEY,<br><br>    Plaintiff,<br><br>v.<br><br>EITAN GERTEL, et al.,<br><br>    Defendants. | Case No. 5:12-cv-02268-EJD<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 42 |

## I. INTRODUCTION

This is a shareholder derivative action brought by plaintiff on behalf of nominal defendant Finisar Corporation ("Finisar" or the "Company") against certain of its current and former officers and directors for breach of fiduciary duty, unjust enrichment, and indemnity and contribution. Defendants Eitan Gertel ("Gertel"), Jerry S. Rawls ("Rawls"), Kurt Adzema ("Adzema"), Roger C. Ferguson ("Ferguson"), Robert N. Stephens ("Stephens"), Thomas E. Pardun ("Pardun"), Michael C. Child ("Child") and Dominique Trempont ("Trempont") (collectively the "Individual Defendants") and Finisar move to dismiss Nominal Plaintiff James Kenney's Verified Amended Shareholder Derivative Amended Complaint ("Complaint") pursuant to Federal Rule of Civil Procedure 23.1 ("Rule 23.1") for failure to adequately plead demand futility.[1] For the reasons set

---

[1] Defendants' motion to dismiss is accompanied by a Request for Judicial Notice of (1) excerpts from Finisar's Registration Statement on Form S-1, which was filed with the SEC on October 19, 1999; (2) Finisar's Annual Report on Form 10-K for Fiscal Year 2010 ended April 30, 2010, filed with the SEC on July 1, 2010; (3) a Finisar press release dated December 1, 2010, attached as an Exhibit to a Form 8-K filed with the SEC on December 1, 2010; (4) a Finisar press release dated March 8, 2011, attached as an Exhibit to a Form 8-K filed with the SEC on March 8, 2011; (5) thejudagroup, "Morning Meeting Note" dated January 5, 2011; and (6) documents filed in In re Finisar Corporation Securities Litigation, No. 5:11-cv-01252-EJD (the "Securities Action"). Dkt.

Case No.: 5:12-cv-02268-EJD
ORDER GRANTING MOTION TO DISMISS

1

forth below, the motion is granted.

## II.  BACKGROUND[2]

Finisar develops and sells fiber optic subsystems and components that interconnect various types of networked computer equipment. Complaint ¶ 2. The Company supplies its optical products through a direct sales force and distribution channels in the United States and internationally, including the People's Republic of China ("China"). Id. For six consecutive fiscal quarters, Finisar experienced continued revenue growth. Id. ¶ 3. During that time, defendants made misleading statements to investors and analysts suggesting that Finisar's revenue growth was the result of increased demand for Finisar products to be used for immediate production by its customers. Id. The Individual Defendants knew, however, that the Company's revenue growth was a temporary byproduct of its customers' attempts to overstock their inventory. Id.

Every year, Finisar engages in contract negotiations with customers over the last few months of the calendar year. Id. ¶ 4. During these negotiations, Finisar and its customers discuss, among other things, demand and production needs. Id. In 2011, the Individual Defendants confirmed that Finisar's revenue surge in recent quarters was primarily due to substantial inventory build-up and overstocking by the Company's customers. Id. ¶ 5. The Individual Defendants learned that Finisar customers had been ordering additional products ("double ordering") due to fear surrounding short-term supply chain constraints in the optical component industry. Id. Therefore, the Individual Defendants knew that the Company's growth could not be sustained over time and would plummet as supply constraints loosened. Id. "When the supply restraint fears subsided, Finisar's customers were left with an oversupply of inventory and, thus, would decrease the amount of products they ordered from Finisar in order to reduce their

---

No. 42-1. Plaintiff does not object to Defendants' Request for Judicial Notice, so long as the documents for which notice is sought are not accepted for the truth of the matters contained therein. Dkt. No. 45, p. 3, n. 3. Defendants' Request for Judicial Notice is granted. The Court takes judicial notice of the documents, but not for the truth of the matters asserted therein.

[2] The Background is a summary of the allegations in the Complaint. See Dkt. No. 36.
Case No.: 5:12-cv-02268-EJD
ORDER GRANTING MOTION TO DISMISS
2

inventory levels." Id. In particular, the Individual Defendants knew that Finisar was experiencing a serious slowdown in business from China. Id. ¶ 6.

"The Individual Defendants also knew prior to December 2, 2010, when the price negotiations for the 2011 calendar year were complete, that Finisar was experiencing increasing pricing pressures due to intense competition in the industry." Id. ¶ 7. In particular, the Individual Defendants knew that: (i) Finisar's revenue growth was not due to increased demand, but instead was the result of industry-wide concerns over supply restraints and allocations; (ii) concerns over supply restraints and allocation had subsided and Finisar's customers would no longer be ordering "extra" product; (iii) Finisar customers would be ordering fewer products in the next quarter and future quarters because they had inventory after the build-up in previous quarters; and (iv) global sales would drop due to deteriorating financial conditions in China. Id. Finisar offered steeply discount pricing in order to retain certain of its customers. Id.

On December 1, 2010, Finisar reported its sixth consecutive quarter of revenue growth: $240.9 million in revenue for the second quarter of fiscal 2011 and EPS of $0.44. Id. ¶ 8. Defendants estimated that revenues would increase to between $247 million and $262 million in the next quarter and projected EPS in a range of $0.45-$0.47. Id.

Finisar's stock continued to trade at an artificially inflated price, reaching a high of $43.23 per share on February 14, 2011. Id. ¶ 9. Certain Defendants sold their personally-held shares of Finisar stock for proceeds of almost $6.5 million while in possession of material, non-public information regarding Finisar's true financial condition. Id.

On March 8, 2011, Defendants disclosed that Finisar's revenues for the fourth fiscal quarter 2011 would be lower than Defendants' previous estimates. Id. ¶ 10. Defendants blamed the weak fourth-quarter forecasts on several factors, including: price negotiations with its telecom customers that usually take effect January 1; a 10-day shutdown at certain customers to celebrate the Chinese New Year; inventory adjustments; and the overall economic slowdown in China and a slowdown in Chinese business. Id.

After the March 8, 2011 disclosure, Finisar's stock price fell approximately 39%, from

$40.04 per share on March 8, 2011 to close at $24.61 on March 9, 2011. Id. ¶ 11. A few days later, Finisar became the subject of the Securities Action, which remains pending before this Court. The Securities Action is based upon a statement made by Finisar's then-CEO, Gertel, during a conference call with analysts, media representatives and investors on December 10, 2010. One analyst asked, "Can you help us understand how it's possible for the company to not only sustain that [growth] but continue to grow faster than the end markets?" Id. ¶ 72. Gertel said, among other things, "As far as we know we haven't seen any inventory issues with our product with our customers," and "there can be one or two guys who try to build their own inventory, but by far the majority of the customers expediting products and doesn't look to us, not visible to us at all, all these quarters if they are building any inventory." Id.

The instant shareholder derivative action was filed in May of 2014. In Count I, Plaintiff alleges that the Individual Defendants breached their fiduciary duty by causing the Company to improperly misrepresent the business prospects of the Company and failing to correct the Company's publicly reported misstatements and improper sales and earnings guidance despite knowing that these statements were false at the time they were made. Id. ¶ 143. Plaintiff alleges that the Individual Defendants violated and breached their fiduciary duty of loyalty by "intentionally making and permitting to be made multiple, repeated misleading statements" in Finisar's SEC filings and in press releases that they knew did not properly describe Finisar's demand, inventory, sales and earnings prospects, and internal controls." Id. ¶ 144. The statements were made in spite of the Individual Defendants' knowledge or conscious disregard of facts indicating that Finisar's demand was decreasing and inventory was piling up, which made the Company's previously reported revenue growth unsustainable. Id.

Plaintiff also alleges that the Individual Defendants violated and breached their fiduciary duties of candor, good faith, and loyalty "by creating a culture of lawlessness within Finisar, and/or consciously failing to prevent to [sic] Company from engaging in the unlawful acts complained of herein." Id. ¶ 145. In particular, Plaintiff alleges that the Officer Defendants either knew, were reckless, or were grossly negligent in not knowing that: (i) the Company's apparent

Case No.: 5:12-cv-02268-EJD
ORDER GRANTING MOTION TO DISMISS
4

revenue growth was unsustainable and primarily the result of known but undisclosed overstocking of its products by the Company's customers due to industry-wide rumors of pending supply shortages; (ii) as the supply constraints loosened, the Company's customers were saddled with an oversupply of inventory and, thus, would need to decrease the amount of products they ordered from Finisar in order to reduce their inventory levels; (iii) Finisar was experiencing increasing pricing pressures due to intense competition in the industry and, as a result, the Company was forced to provide steep discounts in order to retain certain of its customers; and (iv) sales in China had been dwindling for months with no indication of rebounding to previous levels which would have a detrimental effect on the Company's ability to continue growing at unprecedented rates. Id.

Plaintiff alleges that Director Defendants Child, Ferguson, Gertel, Pardun, Rawls, Stephens, and Trempont breached their duty of loyalty by "recklessly permitting the improper activity concerning the Company's false statements" and permitting insider trading by Gertel, Ferguson, and Adzema. Id. ¶ 146. Plaintiff alleges that the Audit Committee Defendants— Ferguson, Pardun, Child, and Trempont—breached their fiduciary duty of loyalty by approving misleading public statements. Id. ¶¶ 147-48. According to Plaintiff, the Audit Committee Defendants failed in their duty of oversight and failed in their duty to appropriately review financial results. Id. ¶ 148. Plaintiff alleges that the Insider Selling Defendants—Gertel, Adzema, and Ferguson—breached their fiduciary duty of loyalty by selling their Finisar stock while in possession of non-public, material information concerning the Company's inability to meet its earnings guidance. Id. ¶¶ 149-150.

In Count II, Plaintiff alleges that the Individual Defendants were unjustly enriched when they sold their Finisar stock while in possession of material, adverse non-public information that artificially inflated the price of Finisar stock. Id. ¶ 155. In Count III, Plaintiff alleges that Finisar is entitled to contribution and indemnification from the Individual Defendants. Id. ¶ 163.

### III. STANDARDS

Under Rule 23.1, "a shareholder must either demand action from the corporation's directors before filing a shareholder derivative suit, or plead with particularity the reasons why

Case No.: 5:12-cv-02268-EJD
ORDER GRANTING MOTION TO DISMISS

5

such demand would have been futile." Arduini v. Hart, 774 F.3d 622, 628 (9th Cir. 2014); see Fed. R. Civ. P. 23.1(b)(3). "The purpose of this demand requirement in a derivative suit is to implement the basic principle of corporate governance that the decisions of a corporation—including the decision to initiate litigation—should be made by the board of directors or the majority of shareholders." Rosenbloom v. Pyott, 765 F.3d 1137, 1148 (9th Cir. 2014) (internal quotations omitted).

To determine demand futility, courts must look to the substantive law of the entity's state of incorporation to determine whether the demand would have, in fact, been futile. Rosenbloom, 765 F.3d at 1148. In this case, Finisar is a Delaware corporation, and thus Delaware law applies. Under Delaware law, "a shareholder who declines to make a demand on the board of directors may not bring a derivative action until he has demonstrated, with particularity, the reasons why pre-suit demand would be futile." Id. (internal quotations omitted). Demand futility "is gauged by the circumstances existing at the commencement of a derivative suit and concerns the board of directors sitting at the time the complaint is filed." Id. (internal quotations omitted). The court must determine futility on a case-by-case basis, and "[p]laintiffs are entitled to all reasonable factual inferences that logically flow from the particularized facts alleged[.]" Id. However, "conclusory allegations are not considered as expressly pleaded facts or factual inferences." Id.

When a shareholder challenges a decision of a board of directors, Delaware law provides a two-pronged test to determine demand futility. The first prong "is whether, under the particularized facts alleged, a reasonable doubt is created that the directors are disinterested and independent." Id. at 1149. The second prong "is whether the pleading creates a reasonable doubt that the challenged transaction was otherwise the product of a valid exercise of business judgment." Id. This two-pronged approach is known as the "Aronson test," pursuant to Aronson v. Lewis, 473 A.2d 805, 814 (Del. 1984), and is in the disjunctive. Id. "Therefore, if either prong is satisfied, demand is excused." Id.

Under the first prong of the Aronson test, "a director's interest may be shown by demonstrating a potential personal benefit or detriment to the director as a result of the decision."

Case No.: 5:12-cv-02268-EJD
ORDER GRANTING MOTION TO DISMISS
6

Rosenbloom, 765 F.3d at 1149. Thus, "directors who are sued have a disabling interest for pre-suit demand purposes when the potential for liability may rise to a substantial likelihood." Id. In a motion to dismiss, "plaintiffs must make a threshold showing, through the allegation of particularized facts, that their claims have some merit." Id. (internal quotations omitted). Under the second prong of the Aronson test, "the question is whether the pleading creates a reasonable doubt that the challenged transaction was the product of a valid exercise of business judgment." Id. The Aronson test is limited to board business decisions. Tindall v. First Solar Inc., 892 F.3d 1043, 1047 (9th Cir. 2018).

Where the subject of the derivative suit is not a business decision of the board, the test is "whether or not the particularized factual allegations of a derivative stockholder complaint create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand." Rales v. Blasband, 634 A.2d 927, 934 (Del. 1993). The difference between the Aronson and Rales may be blurred in cases in which personal liability for breach of fiduciary duties implicates the board's availment of business judgment protections. Rosenbloom, 765 F.3d at 1150. "Under either approach, demand is excused if Plaintiffs' particularized allegations create a reasonable doubt as to whether a majority of the board of directors faces a substantial likelihood of personal liability for breaching the duty of loyalty." Id. In turn, the duty of loyalty "is violated where directors fail to act in the face of a known duty to act, thereby demonstrating a conscious disregard for their responsibilities and failing to discharge the non-exculpable fiduciary duty of loyalty in good faith." Id. (internal quotations omitted).

Under Delaware law, "directors who knowingly disseminate false information that results in corporate injury or damage to an individual stockholder violate their fiduciary duty, and may be held accountable in a manner appropriate to the circumstances." Malone v. Brincat, 722 A.2d 5, 12 (Del. 1998). Directors may also be held liable for breach of their fiduciary duty if they "authorize[] without fault or knowledge a misleading disclosure, later come[] into knowledge of the misleading nature of the previous communication, and knowingly and in bad faith (in other

Case No.: 5:12-cv-02268-EJD
ORDER GRANTING MOTION TO DISMISS
7

words, "dishonestly") fail[ ] to correct the misleading impression created by the earlier communication." Metro Communication Corp. BVI v. Advanced Mobilecomm Technologies Inc., 854 A.2d 121, 159 (Del. Ch. 2004).

## IV. DISCUSSION

When this action was initiated, Finisar's Board consisted of the following six directors: Gertel, Rawls, Child, Ferguson, Pardun, and Stephens. As such, demand will be excused as futile if there is a reason to doubt that three of the six directors are unable to disinterestedly or independently consider a demand. See Aronson, 473 A.2d at 814-15; Rosenbloom, 765 F.3d at 1148. Plaintiff advances three arguments in support of demand futility. First, Plaintiff contends that demand is excused as to the entire Board because "they face a substantial likelihood of liability for breaching their fiduciary duty of loyalty for making and/or knowingly permitting misrepresentations regarding the nature and sustainability of the Company's past and future revenue growth." Dkt. 45, p. 15. Second, Plaintiff contends that demand is futile as to Defendants Gertel and Ferguson because they face a substantial likelihood of liability for insider trading. Third, Plaintiff contends that there is a reasonable doubt that Defendants Gertel and Rawls are independent.

A. Allegations re Defendants Knowingly Making and/or Approving False and Misleading Statements

Plaintiff asserts that the Board knew Finisar's revenue growth was unsustainable due to oversupply of inventory and slowdown in China. The Board allegedly learned of this information from Gertel's and Rawls' routine discussions with Finisar's customers regarding inventory issues and during the annual contract negotiations[3], which were completed by December 1, 2010. Plaintiff also alleges that the entire Board's knowledge can be inferred from: Defendants' regular assurances to analysts and investors that Finisar had high visibility into product demand (including

---

[3] Defendants request that the Court disregard allegations regarding annual contract negotiations. The request is denied because Defendants have not established that Plaintiff violated Federal Rule of Civil Procedure 11.

Case No.: 5:12-cv-02268-EJD
ORDER GRANTING MOTION TO DISMISS

8

WSS and ROADM line cards), as well as Gertel's and Rawls' admissions in the Answer filed in the Securities Action. Plaintiff also contends that it is reasonable to expect that Gertel and Rawls shared information regarding oversupply issues and declining sales in China with the entire Board because of the materiality of such information to Finisar's projected revenue. Despite knowing about inventory issues and declining sales, the entire Board allegedly permitted misleading statements that "dismissed analysts' repeated concerns and suggested that the Company's recent and anticipated future revenue growth was the result of a steady and ongoing increase in demand." Dkt. 45, p. 14.

<u>Demand Futility Based on Gertel's December 2, 2010 Statement</u>

Plaintiff's allegations are insufficient to establish that every member of the Board faces a substantial likelihood of personal liability for knowingly making and/or approving Gertel's December 2, 2010 statement. There is no particularized allegation in the Complaint that any other Board member knew of adverse information regarding inventory conditions prior to Gertel making the December 2, 2010 statement that would have rendered Gertel's statement false or misleading.

Plaintiff points to a statement made by defendant Rawls in March 2011 that the Company "continually" asked customers about inventory issues. Dkt. No. 45, p. 11. Plaintiff also relies on Gertel's acknowledgement that during annual contract negotiations, the Company would consider, among other things "market demand." <u>Id</u>. These generalized allegations are insufficient to establish that each of the individual Defendants face a substantial likelihood of liability for Gertel's December 2, 2010 statement. Plaintiff does not allege with particularized facts what, if any, negative information about inventory issues was imparted during communications or contract negotiations with customers.[4] To the contrary, the Complaint includes allegations that suggest customers gave positive information. According to Rawls, customers "say 'No. We're buying for production and we're not buying for inventory.'" Complaint ¶ 75. Plaintiff also fails to allege

---

[4] Plaintiff does not address Defendants' rebuttals of several additional purported sources of adverse inventory information. <u>See</u> Defendants' Motion to Dismiss (Dkt. No. 47) at 17:27-18:6 (operating expenses); 18:7-14 (rolling production forecasts), 18:24-19:14 (visibility as to LAN/SAN customers, as distinguished from telecom customers).

Case No.: 5:12-cv-02268-EJD
ORDER GRANTING MOTION TO DISMISS
9

with particularized facts what, if any, negative information about inventory issues Rawls or Gertel shared with other members of the Board. Furthermore, there is no particularized allegation in the Complaint that any Board member had any connection to Gertel's impromptu oral statement. Plaintiff does not allege, for example, that any other Defendant directed Gertel to make the oral statement.

Plaintiff contends that knowledge of such information can be imputed to Defendants under the "core operations" doctrine. See e.g. Dkt. No. 45, p. 4. Plaintiff alleges, for example, that China sales constituted such a large percentage of Finisar's business (23%) that the Board would have kept informed about inventory developments for Chinese customers. The "core operations" doctrine, however, does not excuse Plaintiff from pleading particularized facts to establish demand futility. See e.g. In re First Solar Deriv. Litig, No. 12-769 PHX, 2016 WL 3548758, *12-13 (D. Ariz. June 30, 2016), aff'd sub nom. Tindall v. First Solar Inc., 892 F.3d 1043 (9th Cir. June 13, 2018); In re Rocket Fuel Inc., No. 15-4625 PJH, 2016 WL 4492582, *8 (N.D. Cal. August 26, 2016). Plaintiff fails to allege with particularized facts what negative information, if any, the Board members possessed regarding sales to China that contradicted or called into question Gertel's December 1, 2010 statement.

Citing to Rawls' statement on March 4, 2010, Plaintiff next alleges that the Company had high visibility into ROADM orders. This allegation is similarly insufficient to establish each Director's personal liability. Plaintiff does not explain how the 14-16 week lead time announced in early March 2010 rendered Gertel's December 2, 2010 statement false or misleading. There are no particularized facts from which to infer that the 14-16 week lead time was constant and continued through the six months leading up to Gertel's December 2, 2010 statement.

Plaintiff also alleges that on March 8, 2011, Rawls admitted that "the Individual Defendants were aware of the slowdown in China sales, and 'the impact [for] a couple of months in terms of reduced order rates, things that we had forecast [] at the end of last year of expected orders and capacity demands that were going into 2011.'" Dkt. No. 45, pp. 11-12. Although this alleged admission is closer in time, Gertel's December 2, 2010 statement was made more than

Case No.: 5:12-cv-02268-EJD
ORDER GRANTING MOTION TO DISMISS

10

three months earlier.  Furthermore, even if the Individual Defendants knew of the slowdown in China sales on December 2, 2010, Plaintiff does not explain how this slowdown in sales, without more, renders Gertel's statement false or misleading.  Although demand and inventory for product may be related, they are not the same.

Plaintiff next asserts that the Audit Committee Defendants are liable for Gertel's statement because they had a duty to review and discuss with management information provided to securities analysts.  Plaintiff also argues that the entire Board is liable for Gertel's statement because in light of the Company's history of repeatedly assuring analysts and the public that revenue growth was sustainable and not the result of inventory issues, the entire Board had a duty to pay attention to any public statements to ensure any newly discovered material information regarding revenue was timely disclosed and not continually misrepresented.  These allegations raise at most a theoretical possibility, not a substantial likelihood, of personal liability arising out of Gertel's December 2, 2010 statement.

Demand Futility Based on Other Alleged Misstatements

Plaintiff alleges that the entire Board faces liability for misstatements other than Gertel's December 2, 2010 statement.  As a threshold matter, Plaintiff's argument is faulty because Plaintiff has not alleged damages resulting from any misstatement other than Gertel's December 2, 2010 statement.  Plaintiff alleges that Finisar is spending money to defend and may be held liable for (or settle) the Securities Action.  Complaint ¶ 115.  The only remaining alleged misstatement in the Securities Action is Gertel's December 2, 2010 statement.  Therefore, the only possible statement that may have damaged Finisar is Gertel's December 2, 2010 statement.

Plaintiff also alleges that Finisar was damaged because Board members were paid to serve and directors and officers.  Id.  This argument is circular.  If the Board members did not cause damage to Finisar, the Board members did not breach their fiduciary duty and hence were not unjustly enriched.  See Saginaw Police & Fire Pension Fund v. Hewlett-Packard Co., 2012 WL 967063, *9 (N.D. Cal. Mar. 21, 2012) (no breach of duty means no unjust enrichment).

Even if Plaintiff had alleged damages (which he has not), Plaintiff's allegations remain

Case No.: 5:12-cv-02268-EJD
ORDER GRANTING MOTION TO DISMISS
11

deficient to establish demand futility. Plaintiff alleges that the entire Board faces liability for a statement Rawls made during an analyst call on September 2, 2010. An analyst asked, "so-in terms of inventory, you control, notwithstanding the big increase in inventory in the quarter, of course, you would argue is to address increasing demand, you're not concerned?" Complaint ¶ 82. Rawls responded, "Not concerned." Id. Plaintiff argues that there is at least a reasonable inference that Defendants knew at this time that Rawls' statement was misleading. The argument is unpersuasive because it is unsupported by any particularized facts to establish that Defendants had insight into Rawls' state of mind or level of concern, much less that Defendants knowingly allowed Rawls to disseminate false or misleading information.

Plaintiff also cites to the Company's December 1, 2010 press release and December 8, 2010 Form 10-K, wherein defendant Gertel stated that "'the market environment continued to be very strong for Finisar, driven by increased demand for ... telecom products,'" and that "'[w]e expect revenues for WSS/ROADM line cards to grow another 20% to 30% sequentially in our fiscal third quarter.'" Complaint ¶¶ 84, 88. The revenue predictions eventually proved to be accurate. Nevertheless, Plaintiff argues that even a literally true statement is actionable where it creates a "false impression as to the true state of affairs, and the actor fails to provide qualifying information to cure the mistaken belief." Norton v. Poplos, 443 A.2d 1, 5 (Del. 1982). Plaintiff's argument is unpersuasive. Gertel's statement simply does not create a false impression: Gertel's revenue prediction was accurate, and Gertel did not make a representation about future trends in general, nor did he make forecasts beyond the third quarter.

Lastly, Plaintiff cites to Defendant Rawls' statements during a December 7, 2010 program. Rawls highlighted Finisar's "double-digit, sequential growth." Complaint ¶ 87. The statement was allegedly misleading because Rawls failed to disclose material information then-known regarding inventory oversupply and an impending, significant decline in sales. These allegations do not implicate any Board member other than Rawls. Furthermore, Rawls' statement accurately reported past results; the statement did not include a forecast or prediction about the future.

Case No.: 5:12-cv-02268-EJD
ORDER GRANTING MOTION TO DISMISS

12

In sum, Plaintiff's allegations fail to establish a substantial likelihood that Defendants face personal liability for knowingly disseminating false information on September 2, 2010, December 1, 2010, or December 7, 2010.

B.  Remaining Allegations re Demand Futility

Because Plaintiff has failed to allege that a majority of the Board faces a substantial likelihood of personal liability for any alleged misstatement, it is unnecessary for the Court to consider Plaintiff's remaining futility arguments regarding Gertel's and Ferguson's alleged insider selling and Gertel's and Rawls' alleged lack of independence.

V.  CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss is GRANTED with leave to amend.  Plaintiff shall file and serve an amended complaint no later than September 28, 2018.

**IT IS SO ORDERED.**

Dated:  September  5, 2018

EDWARD J. DAVILA
United States District Judge

Case No.: 5:12-cv-02268-EJD
ORDER GRANTING MOTION TO DISMISS
13