ROBBINS ARROYO LLP
BRIAN J. ROBBINS (190264)
brobbins@robbinsarroyo.com
KEVIN A. SEELY (199982)
kseely@robbinsarroyo.com
ASHLEY R. RIFKIN (246602)
arifkin@robbinsarroyo.com
STEVEN M. McKANY (271405)
smckany@robbinsarroyo.com
5040 Shoreham Place
San Diego, CA 92122
Telephone: (619) 525-3990
Facsimile: (619) 525-3991

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JAMES KENNEY, Derivatively on Behalf of FINISAR CORPORATION,<br><br>                         Plaintiff,<br><br>          v.<br><br>EITAN GERTEL, JERRY S. RAWLS, KURT ADZEMA, ROGER C. FERGUSON, ROBERT N. STEPHENS, THOMAS E. PARDUN, MICHAEL C. CHILD, and DOMINIQUE TREMPONT,<br><br>                         Defendants,<br>          -and-<br><br>FINISAR CORPORATION, a Delaware corporation,<br><br>                         Nominal Defendant. | Case No. C-12-02268-EJD<br><br>**PLAINTIFF'S NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF DERIVATIVE SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br><br>Hearing Date:    June 27, 2019<br>Hearing Time:    9:00 A.M.<br>Ctrm:              4 – 5th Floor<br>Judge:            Hon. Edward J. Davila |

# TABLE OF CONTENTS

STATEMENT OF ISSUES TO BE DECIDED ...........................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ...........................................................2

I.     INTRODUCTION ......................................................................................................2

II.    BACKGROUND OF THE LITIGATION................................................................4

       A.    Proceedings in the Related Federal Securities Action ...........................4

       B.    Proceedings in This Derivative Action ...................................................5

       C.    Settlement Efforts ...................................................................................6

       D.    Preliminary Approval Granted and Notice to Stockholders ..................7

III.   THE STANDARDS FOR JUDICIAL APPROVAL OF A DERIVATIVE
      SETTLEMENT ...........................................................................................................7

IV.  THE SETTLEMENT SHOULD BE FINALLY APPROVED .................................8

       A.    The Settlement Confers a Substantial Benefit upon Finisar ..................8

       B.    The Risks of Establishing Liability and Damages................................12

       C.    The Complexity, Expense, and Likely Duration of Continued Litigation
           Supports Approval of the Settlement.....................................................14

       D.    The Settlement Was Negotiated by the Parties with a Thorough
           Understanding of the Strengths and Weaknesses of the Parties' Respective
           Positions.................................................................................................14

       E.    The Experience and Views of Counsel Favor Approval .......................15

V.   THE SEPARATELY NEGOTIATED ATTORNEYS' FEES AND EXPENSES
      SHOULD BE APPROVED .......................................................................................16

       A.    Unopposed Fees Negotiated at Arm's-Length Are Favored .................16

       B.    The Fee and Expense Amount Is Fair and Reasonable in Light of the
           Substantial Benefits Obtained...............................................................17

       C.    A Lodestar Cross-Check Supports the Fairness and Reasonableness of the
           Fee and Expense Amount ......................................................................19

       D.    The Service Award Is Reasonable .........................................................20

VI.  CONCLUSION.........................................................................................................21

- i -

## <u>TABLE OF AUTHORITIES</u>

**CASES**                                                                   **PAGE(S)**

*Boyd v. Bechtel Corp.*,
    485 F. Supp. 610 (N.D. Cal. 1979) ...................................................................14

*Cohn v. Nelson*,
    375 F. Supp. 2d 844 (E.D. Mo. 2005)..........................................................14, 19

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983)......................................................................................16

*In re Apple Comput., Inc. Derivative Litig.*,
    No. C 06-4128 JF (HRL), 2008 WL 4820784 (N.D. Cal. Nov. 5, 2008) .....................8, 17

*In re Google Inc. S'holder Derivative Litig.*,
    No. CV-11-0448-PJH, 2015 WL 12990195 (N.D. Cal. Jan. 21, 2015)............................17

*In re NVIDIA Corp. Derivative Litig.*,
    No. C-06-06110-SBA (JCS), 2008 WL 5382544 (N.D. Cal. Dec. 22,
    2008) ....................................................................................................7, 8

*In re OSI Sys., Inc. Derivative Litig.*,
    No. CV-14-2910-MWF, 2017 WL 5642304 (C.D. Cal. May 2, 2017) ................... *passim*

*In re Pac. Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) .......................................................................12, 14

*In re Rambus Inc. Derivative Litig.*,
    No. C 06-3513 JF (HRL), 2009 WL 166689 (N.D. Cal. Jan. 20, 2009)............................17

*Lloyd v. Gupta*,
    No. 15-CV-04183-MEJ, 2016 WL 3951652 (N.D. Cal. July 22, 2016)............................7

*Maher v. Zapata Corp.*,
    714 F.2d 436 (5th Cir. 1983) .....................................................................13, 18

*Mills v. Elec. Auto-Lite Co.*,
    396 U.S. 375 (1970)....................................................................................8, 16

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982) ............................................................... *passim*

*Prod. Res. Grp., L.L.C. v. NCT Grp., Inc.*,
    863 A.2d 772 (Del. Ch. 2004)........................................................................13

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ..........................................................................8

*Unite Nat'l Ret. Fund v. Watts*,
   No. Civ. A. 04CV3603DMC, 2005 WL 2877899 (D.N.J. Oct. 28, 2005) ...................8, 17

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) .........................................................................................19

**STATUTES, RULES & OTHER AUTHORITIES**

Fed. R. Civ. P. 23.1(c) .........................................................................................................7

NOTICE OF MOT. AND UNOPPOSED MOT. FOR FINAL APPROVAL OF
DERIVATIVE SETTLEMENT AND MEMO. IN SUPPORT THEREOF

CASE NO. C-12-02268-EJD

**TO:    ALL PARTIES AND THEIR ATTORNEYS OF RECORD**

PLEASE TAKE NOTICE that on June 27, 2019, at 9:00 a.m., or as soon thereafter as counsel may be heard, plaintiff James Kenney ("Plaintiff"), individually and derivatively on behalf of nominal defendant Finisar Corporation ("Finisar" on the "Company"), will move unopposed pursuant to Rule 23.1 of the Federal Rules of Civil Procedure ("Rule 23.1") before the Honorable Edward J. Davila, U.S. District Judge, at the U.S. District Court, Northern District of California, San Jose Courthouse, 280 South 1st Street, Courtroom 4, San Jose, California 95113, seeking an order granting final approval of the settlement of this case ("Settlement"), as set forth in the Stipulation of Settlement dated February 14, 2019 ("Stipulation" or "Stip.") (ECF No. 65-2).  At the hearing, the Court will determine: (i) whether the terms of the Stipulation should be approved as fair, reasonable, and adequate; (ii) whether the Notice fully satisfied the requirements of Rule 23.1 and the requirements of due process; (iii) whether all Released Claims against the Released Persons should be fully and finally released; (iv) whether the agreed-to Fee and Expense Amount and Service Award should be approved; and (v) such other matters as the Court may deem appropriate.[1]

This Unopposed Motion is based on this Notice and Motion, the accompanying Memorandum of Points and Authorities, the Declarations of Ashley R. Rifkin and Margaret Austin ("Rifkin Decl." and "Austin Decl.," respectively), the Court's record on this matter, and other evidence and argument that may be presented prior to the Court's decision on this Motion.

Finisar and the Individual Defendants do not oppose the relief sought in this Unopposed Motion.

<u>**STATEMENT OF ISSUES TO BE DECIDED**</u>

Whether: (i) the terms of the Stipulation should be approved as fair, reasonable, and adequate; (ii) the Notice fully satisfied the requirements of Rule 23.1 and the requirements of due process; (iii) all Released Claims against the Released Persons should be fully and finally

---

[1] Unless otherwise noted, all capitalized terms used herein shall have the same meanings as set forth in the Stipulation.

NOTICE OF MOT. AND UNOPPOSED MOT. FOR FINAL APPROVAL OF          CASE NO. C-12-02268-EJD
DERIVATIVE SETTLEMENT AND MEMO. IN SUPPORT THEREOF

released; and (iv) the agreed-to Fee and Expense Amount and Service Award should be approved.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

The Settlement provides substantial benefits for Finisar, and is the product of vigorous, arm's-length negotiations among the Settling Parties, with mediator Robert A. Meyer ("Mediator") assisting the Parties in reaching the agreed-upon Fee and Expense Amount.  On May 3, 2019, this Court granted preliminary approval of the Settlement, holding that "the proposed Settlement falls within the range of possible approval criteria, as it provides a beneficial result for Finisar and appears to be the product of serious, informed, non-collusive negotiations overseen by an experienced mediator."  Preliminary Approval Order (ECF No. 73) at 1.

The Settlement provides for substantial corporate governance Reforms that directly address the alleged wrongdoing and enhance the independence of Finisar's Board of Directors ("Board") and reduce the likelihood of reoccurrence of the alleged misstatements.  *See* Stip., ¶2.1 & Ex. A.  Among other things, the Reforms include: (i) enhanced Board independence, requiring three-fourths of the members of the Board to satisfy heightened independence requirements; (ii) enhanced duties for the Lead Independent Director; (iii) a requirement that the independent directors meet in executive session at least quarterly; (iv) a formal continuing education program for directors; (v) a requirement that management regularly report to the Board regarding material issues concerning the Company's core products, including consumer demand and/or sales forecasts, inventory issues, and performance and/or production defects; (vi) the identification of a Compliance Officer to manage Finisar's ethics and compliance program, assist the Board in fulfilling its oversight duties, and work with the Audit Committee to provide further oversight over the Company's public disclosures; and (vii) a requirement that the Audit Committee review all material finance-related public communications prior to public release.  *Id.*  The Reforms

NOTICE OF MOT. AND UNOPPOSED MOT. FOR FINAL APPROVAL OF          CASE NO. C-12-02268-EJD
DERIVATIVE SETTLEMENT AND MEMO. IN SUPPORT THEREOF

1  provide for a more engaged and independent Board, enhanced Board and executive oversight

2  over the Company's public disclosures, and stronger internal controls.   *Id.*

3       The Reforms also provide significant controls in the event Finisar is acquired.  When the

4  parties were close to finalizing the corporate governance terms of the Settlement, Finisar entered

5  into a merger agreement with II-VI Inc. ("II-VI") (the "Acquisition").  *See* Stip., §I.C.  As of the

6  date of this filing, the shareholders of both companies have approved the Acquisition, but the

7  Acquisition will not become effective unless it is approved by a regulatory agency in China.

8  Rifkin Decl., ¶5.  If the Acquisition becomes effective, Finisar will continue to operate as a

9  wholly owned subsidiary of II-VI, Finisar shareholders will receive a combination of cash and

10 stock in II-VI, and three of Finisar's current directors will be appointed to the board of directors

11 of II-VI.  *Id.*  In light of this potential Acquisition, Plaintiff negotiated for additional reforms that

12 will provide substantial benefits in the event the Acquisition is approved.  *See* Stip., §I.C.  Most

13 importantly, the Settling Parties agreed to require Finisar management and/or the Board to meet

14 with management of the Acquirer to develop appropriate policies and procedures to ensure

15 timely reporting to the Acquirer regarding material information regarding Finisar's products,

16 including, but not limited to, performance and/or production defects, consumer demand and/or

17 sales forecasts, inventory issues and other external factors that may impact the price of the

18 Company's products.  *See id.*, ¶2.1 & Ex. A.  This will ensure that necessary information

19 regarding Finisar's ongoing operations will be timely communicated to the Acquirer so that the

20 Acquirer has accurate information to disseminate to shareholders and the investing public,

21 thereby significantly reducing the likelihood of reoccurrence of the alleged misstatements.  In the

22 event that an Acquisition occurs, however, and Finisar ceases to be an independent company, the

23 Stipulation of Settlement allows the merged company the flexibility that a board of directors

24 needs to exercise its business judgment in the best interests of Finisar and/or the Acquirer:  it

25 provides that "the Settlement will not preclude Acquirer and/or Finisar from taking any actions

26 necessary and/or advisable for the operation of Finisar's business, including amending or

27 eliminating any of the Reforms."  *See id.*, ¶2.1 & Ex. A.

28

1    Finisar and the Individual Defendants expressly acknowledge that these Reforms are

2  "significant and confer substantial benefits upon Finisar and its shareholders," and that Plaintiff's

3  "prosecution and settlement of the Action was the sole factor in Finisar's agreement to adopt

4  and/or implement the corporate governance reforms." *See id.*, ¶2.1.  The Settlement is also

5  firmly supported by Finisar's independent, non-defendant directors, who "reviewed the

6  allegations and the Settlement terms, and, in a good faith exercise of business judgment,

7  determined the Settlement and each of its terms, as set forth in th[e] Stipulation, to be in the best

8  interests of Finisar." *Id.*, §IV.  As detailed herein, these substantial benefits conferred on Finisar

9  support final approval of the Settlement.

10    After negotiating the material terms of the Settlement, the Settling Parties, with the

11  assistance of the Mediator, negotiated the amount of attorneys' fees and expenses to be paid to

12  Plaintiff's Counsel.  As a result of those negotiations, the Individual Defendants have agreed to

13  cause their insurers to pay Plaintiff's Counsel $190,000 in recognition of the substantial benefits

14  conferred upon the Company.  *Id.*, ¶4.1.  This Fee and Expense Amount has been approved by

15  Finisar's independent, non-defendant directors in a good faith exercise of business judgment.  *Id.*,

16  §IV.

17    In sum, the Settlement confers substantial benefits upon Finisar, is fair, reasonable, and

18  adequate, and should be approved in its entirety.

19  **II.    BACKGROUND OF THE LITIGATION**

20    **A.    Proceedings in the Related Federal Securities Action**

21    The alleged misstatements at issue in this Action caused Finisar, and two of its then-

22  executives, to be named in a federal securities fraud class action, titled *In re Finisar Corporation*

23  *Securities Litigation*, No. 5:11-cv-01252-EJD, which was dismissed with prejudice by order of

24  this Court entered on May 25, 2019 (the "Securities Action").  In connection with the Securities

25  Action, the Ninth Circuit found that one of the alleged misstatements was an actionable "falsity,"

26  and this Court subsequently held the plaintiff adequately pleaded scienter and denied the

27  defendants' motion to dismiss that action.

28

But the Court subsequently denied the plaintiff's motion for class certification of the Securities Action, finding that the plaintiff had not shown the alleged misstatement had a price impact (as required to rebut the fraud-on-the-market presumption of reliance).  The plaintiff in the Securities Action filed a motion for reconsideration of the Court's order denying class certification, which the Court denied.   The plaintiff then filed a petition for permission to appeal the Court's orders denying class certification and motion for reconsideration, which the Ninth Circuit denied.  The Court recently entered an order striking the plaintiff's renewed motion for class certification, and granting the defendants' motion for judgment on the pleadings.

### B.       Proceedings in This Derivative Action

On May 4, 2012, Plaintiff filed this shareholder derivative action on behalf of Finisar. ECF No. 1.  Beginning on June 6, 2012, this Action was stayed in favor of the motion to dismiss the related Securities Action, including a related appeal. ECF No. 14.  After the Court denied the defendants' motion to dismiss the Securities Action on May 1, 2017, the stay of this Action was lifted.

On August 7, 2017, Plaintiff filed an amended complaint.  ECF No. 36.

The Settling Parties then agreed to temporarily continue the stay of this Action pending resolution of the plaintiff's motion for reconsideration of the order denying class certification in the Securities Action.  ECF No. 38.

On February 14, 2018, the Settling Parties agreed to lift the stay in this Action, and thereafter briefed and argued Defendants' Motion to Dismiss the amended complaint.  ECF Nos. 40, 42, 45, 47, 51.

On September 5, 2018, the Court entered an order granting the Motion to Dismiss with leave to amend.  ECF No. 52.

On September 18, 2018, in light of the Court's ruling and in an effort to obtain further evidence in support of the alleged wrongdoing, Plaintiff issued a demand to the Company to inspect its books and records pursuant to 8 Delaware General Corporation Law, section 220 ("Inspection Demand").   While meeting and conferring regarding Plaintiff's Inspection Demand,

1   the Settling Parties began discussing whether they could reach a settlement that was in the best

2   interests of the Company.

3       **C.   Settlement Efforts**

4       On October 19, 2018, Plaintiff's Counsel sent Defendants' Counsel a settlement demand,

5   which detailed the corporate governance enhancements that Plaintiff believed would provide

6   substantial benefits to Finisar and support a settlement of the derivative claims.  Rifkin Decl.,

7   ¶15.  Over the next several weeks, the Settling Parties engaged in numerous telephonic and

8   written exchanges regarding the terms to be included in any settlement, with a careful eye toward

9   ensuring the settlement included corporate governance reforms tailored to preventing the alleged

10  wrongdoing from recurring.  *Id.*

11      On November 9, 2018, when the Settling Parties were close to reaching an agreement on

12  the corporate governance component of the Settlement, Finisar announced that it entered into a

13  merger agreement with II-VI, pursuant to which, if consummated, Finisar will become a wholly

14  owned subsidiary of II-VI (the Acquisition).  *Id.*, ¶16.

15      In light of the potential Acquisition, Plaintiff negotiated additional governance to ensure

16  that the corporate governance enhancements would continue to provide a substantial benefit to

17  the Company in the event the Acquisition became effective.  *Id.*, ¶17.  The Settling Parties

18  reached an agreement on the corporate governance component of the Settlement on December 4,

19  2018.  *Id.*

20      After negotiating the principal terms of the Settlement, the Settling Parties engaged

21  mediator Robert A. Meyer to assist them in negotiating the amount of attorneys' fees (inclusive

22  of expenses) that Finisar will pay to Plaintiff's Counsel in light of the benefits achieved.  *Id.*, ¶18.

23  Over several weeks, the Mediator worked with the Settling Parties telephonically and assisted the

24  Settling Parties in reaching an agreement in principle to settle the derivative claims.  *Id.*

25      The Settling Parties then executed a Stipulation of Settlement on February 14, 2019.  *Id.*,

26  ¶19.

27

28

- 6 -

### D.     Preliminary Approval Granted and Notice to Stockholders

On May 3, 2019, the Court granted preliminary approval of the Settlement, authorized the dissemination of the Notice to Finisar shareholders, and set the Settlement Hearing for June 27, 2019.  ECF No. 73.  Consistent with the Preliminary Approval Order, on May 10, 2019, the Settlement Notice and Stipulation were filed with the SEC via Form 8-K and posted by a hyperlink on the Investor Relations section of the Company's website.  Austin Decl., (ECF No. 74), ¶¶3-4.  As of the date of this filing, no objections have been received.  Rifkin Decl., ¶20.

## III.   THE STANDARDS FOR JUDICIAL APPROVAL OF A DERIVATIVE SETTLEMENT

"There is a strong policy favoring compromises that resolve litigation, and case law in the Ninth Circuit reflects that strong policy."  *In re NVIDIA Corp. Derivative Litig.*, No. C-06-06110-SBA (JCS), 2008 WL 5382544, at *2 (N.D. Cal. Dec. 22, 2008).[2]  "Settlements of derivative actions are particularly favored because the cases are 'notoriously difficult and unpredictable.'"  *Lloyd v. Gupta*, No. 15-CV-04183-MEJ, 2016 WL 3951652, at *3 (N.D. Cal. July 22, 2016).

Rule 23.1 governs a district court's analysis of the fairness of a settlement of a stockholder derivative action.  Under Rule 23.1, a derivative action "may be settled, voluntarily dismissed, or compromised only with the court's approval."  Fed. R. Civ. P. 23.1(c).  The Ninth Circuit has provided factors which may be considered in evaluating the fairness of a class action settlement, some of which are applicable to a derivative settlement:

> The district court's ultimate determination will necessarily involve a balancing of several factors which may include, among others, some or all of the following: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

---

[2] Here, as throughout, all emphasis is deemed added and citations and footnotes are deemed omitted unless otherwise noted.

- 7 -

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *see Staton v. Boeing Co*., 327 F.3d 938, 959 (9th Cir. 2003).

When considering these factors, the Court is to evaluate whether the Settlement as a whole is fair, reasonable, and adequate to those on whose behalf the suit is brought.  *See Officers for Justice*, 688 F.2d at 625.  In exercising its discretion to approve a settlement, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiated parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."  *Id*.

**IV.     THE SETTLEMENT SHOULD BE FINALLY APPROVED**

**A.     The Settlement Confers a Substantial Benefit upon Finisar**

"The principal factor to be considered in determining the fairness of a settlement concluding a shareholders' derivative action is the extent of the benefit to be derived from the proposed settlement by the corporation, the real party in interest.'"  *In re OSI Sys., Inc. Derivative Litig.*, No. CV-14-2910-MWF (MRWx), 2017 WL 5642304, at *2 (C.D. Cal. May 2, 2017); *see also In re Apple Comput., Inc. Derivative Litig.*, No. C 06-4128 JF (HRL), 2008 WL 4820784, at *2 (N.D. Cal. Nov. 5, 2008).  Corporate governance reforms that "serve to prevent and protect [the company] from the reoccurrence of certain alleged wrongdoings" that resulted in material harm to the corporation confer a substantial benefit on the corporation that warrants settlement approval.  *Unite Nat'l Ret. Fund v. Watts*, No. Civ. A. 04CV3603DMC, 2005 WL 2877899, at *5 (D.N.J. Oct. 28, 2005); *see Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 395-96 (1970) ("a corporation may receive a 'substantial benefit' from .... private stockholders' actions of this sort 'involv[ing] corporate therapeutics' ... [which] furnish a benefit to all shareholders").  As this court noted in the *NVIDIA* derivative litigation, "strong corporate governance is fundamental to the economic well-being and success of a corporation" and "'[c]ourts have recognized that

1  corporate governance reforms such as those achieved here provide valuable benefits to public

2  companies.'" *NVIDIA*, 2008 WL 5382544, at *3.

3         The Settlement guarantees Finisar and its shareholders the substantial and immediate

4  benefits of enhanced governance reforms that directly address the alleged wrongdoing.  Rifkin

5  Decl., ¶21.  The Reforms, which went into effect on February 21, 2019 (seven days after the

6  parties entered into the Stipulation of Settlement), will serve to encourage a more engaged and

7  independent Board, enhanced Board and executive oversight, and significantly stronger internal

8  controls, include:

9         **Director Independence:** The Settlement requires Finisar to maintain a Board comprised

10  of at least 75% independent directors as long as it has a Board of Directors as an independent

11  Company.  These directors must satisfy a list of heightened independence requirements beyond

12  those set forth in the NASDAQ listing standards and the Sarbanes-Oxley Act.  Stip., Ex. A at

13  §A.1-2.  These significant enhancements to the independence of the Board will help ensure that

14  Finisar insiders are held accountable to independent directors, and that potential issues brought to

15  the Board will be independently investigated and considered.  Rifkin Decl., ¶23.

16         **Director Orientation and Continuing Education:** The Settlement requires Finisar to

17  adopt a formal continuing education program that requires, at a minimum, that: (i) each

18  independent director attend at least one day long training course provided by a nationally

19  recognized corporate director education provider at least every three years; (ii) the Company's

20  CEO annually select a topic they believe to be of particular importance to the Company and the

21  Board and present on this topic, or arrange for a person knowledgeable regarding the subject to

22  present on this topic, to the entire Board; and (iii) Finisar's director orientation program

23  developed by the Nominating and Governance Committee is enhanced to also require training on

24  director fiduciary duties.  Stip., Ex. A at §A.4.  These reforms will ensure that all directors are

25  knowledgeable about their fiduciary duties and adequately trained on topics that are of

26  significant importance to Finisar and its shareholders.  Rifkin Decl., ¶24.

27

28

**Reporting to the Board and Acquirer (If Acquisition Becomes Effective):** The Settlement requires the Company's management to provide timely, written presentations to the Board on at least a quarterly basis regarding: (i) consumer demand and/or sales forecasts (and any known related material inventory issues) for the Company's core products; (ii) external factors that may materially impact the price of the Company's core products; (iii) the introduction of the Company's new products; and (iv) material performance and/or production defects concerning the Company's core products, including remediation efforts to resolve any performance and/or production defects.  Stip., Ex. A at §B.1.

The Settlement also provides significant safeguards in the event the Acquisition becomes effective.  Rifkin Decl., ¶26.  Indeed, Finisar's internal controls remain critically important if the Acquisition becomes effective, as Finisar will continue to operate as a wholly owned subsidiary of the Acquirer, three of Finisar's directors will be on the board of directors of the Acquirer, and Finisar's shareholders will be entitled to receive a portion of cash and stock in the Acquirer.  *Id.* Thus, Finisar and its shareholders have a significant interest in ensuring that material information regarding Finisar's ongoing business is accurately and timely reported to the Acquirer.  *Id.* Accordingly, the Settlement provides that, in the event the Acquisition becomes effective, Finisar management and/or the Board shall meet with management of the Acquirer to develop appropriate policies and procedures to ensure timely reporting to the Acquirer regarding: (i) consumer demand and/or sales forecasts (and any known related material inventory issues) for the Company's core products; (ii) external factors that may materially impact the price of the Company's core products; (iii) the introduction of the Company's new products; and (iv) material performance and/or production defects concerning the Company's core products, including remediation efforts to resolve any performance and/or production defects.  Stip., Ex. A at §B.2.

These reforms will ensure that the Board and/or any Acquirer are adequately informed about the Company's core products and any material issues concerning them, thereby providing significant safeguards to ensure accurate information is disseminated to the investing public.  Rifkin Decl., ¶26.

**Compliance Officer Enhanced Duties:** The Settlement provides for the identification of a Compliance Officer and enhanced duties for that position.  Stip., Ex. A at §C.1-2.  These duties include: (i) managing Finisar's ethics and compliance program; (ii) assisting the Board in fulfilling its oversight duties with regard to Finisar's compliance with applicable laws, regulations and accounting standards, and the dissemination of true and accurate information; (iii) implementing procedures for monitoring and evaluating Finisar's compliance program's performance, and communicating with and informing the entire Board regarding progress toward meeting program goals; (iv) reviewing and approving procedures for the receipt, retention, and treatment of complaints received by the Company regarding compliance and ethical concerns, and for the confidential, anonymous submission by employees of such concerns; (v) performing an independent review of Finisar's draft quarterly and annual reports filed with the SEC on Forms 10-Q and 10-K, respectively, and related materials prior to their publication to ensure their accuracy and completeness; and (vi) working with the Audit Committee to review and approve Finisar's press releases and related materials prior to their publication to ensure the accuracy, completeness, and timeliness of disclosures relating to accounting matters, and any material risks to Finisar's compliance with applicable laws and regulations.  *Id.*  These reforms are designed to significantly enhance Finisar's compliance program and provide even further oversight over the Company's public disclosures to ensure the accurate and timely disclosure of material information.  Rifkin Decl., ¶27.

**Audit Committee:** The Settlement requires the Audit Committee to meet in executive sessions for at least a portion of each regular meeting, to meet in executive session with the Compliance Officer quarterly, to review and comment on all proposed material finance-related public communications prior to public release, and to review with management and any appropriate outside professionals important trends and developments in financial reporting practices and requirements and their effect on the Company's financial statements.  Stip., Ex. A at §D.1-4.  This will help ensure the Audit Committee is timely apprised of material, finance-

1  related information, and has significant oversight responsibilities over the Company's financial

2  reporting.  Rifkin Decl., ¶28.

3      The above Reforms, among several additional enhancements obtained through the

4  Settlement, are extensive and will provide substantial benefits to Finisar for years after the

5  Settlement is approved.  *Id*., ¶29.

6      **B.      The Risks of Establishing Liability and Damages**

7      In assessing the fairness, reasonableness, and adequacy of a settlement, the Court should

8  balance the benefits of the Settlement against the continuing risks of litigation.  *See Officers for*

9  *Justice*, 688 F.2d at 625.  There is no question that derivative actions are complex and fraught

10  with risk.  Indeed, the Ninth Circuit, in affirming the district court's approval of a settlement in a

11  derivative action, noted that "the odds of winning [a] derivative lawsuit [are] extremely small"

12  because "derivative lawsuits are rarely successful."  *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373,

13  378 (9th Cir. 1995); *see OSI Systems*, 2017 WL 5642304, at *3 ("derivative lawsuits are difficult

14  to win under any circumstances").  This case was no different.

15      Plaintiff believes that the claims asserted in the Action were meritorious, but liability was

16  by no means assured.  Rifkin Decl., ¶31.  Had Plaintiff continued to litigate, he would have faced

17  serious legal hurdles to survive past the pleading stage.  *Id.*  Indeed, in September 2018, the

18  Court granted Defendants' motion to dismiss, finding that "Plaintiff has failed to allege that a

19  majority of the Board faces a substantial likelihood of personal liability for any alleged

20  misstatement."  Order Granting Motion to Dismiss ("Dismissal Order") (ECF No. 52) at 13.  It is

21  unclear whether Plaintiff would be able to amend the complaint with sufficient information to

22  address the Court's concerns and satisfy the stringent pleading standards for alleging that presuit

23  demand was excused as futile.  Rifkin Decl., ¶31.

24      If Plaintiff successfully overcame Defendants' dismissal motions, litigation would

25  continue to be complex, with serious risks in overcoming potential defenses and in establishing

26  liability.  *Id.*, ¶32.  At the conclusion of discovery and expert reports, complex motions for

27  summary judgment would need to be briefed and argued, and a trial would have to be held.  *Id.*

28

1    Even if Plaintiff was successful in defeating Defendants' dispositive motions, and

2    ultimately established liability at trial, Plaintiff still faced challenges establishing and collecting

3    monetary damages.  *Id.*, ¶33.  In the Court's Dismissal Order, the Court rejected certain alleged

4    damages, and limited potential damages to the one misstatement at issue in the Securities Action.

5    Dismissal Order at 11.  But the Court has repeatedly refused to certify the class in the Securities

6    Action, and recently granted the defendants' motion for judgment on the pleadings, raising

7    additional issues regarding Plaintiff's alleged damages that stem from the Securities Action.

8    Moreover, because Finisar's Certificate of Incorporation contains an exculpatory clause,

9    Plaintiff may have ultimately proved his claims, only to see the Individual Defendants

10   exculpated with respect to payment of monetary damages.  *See, e.g.*, *Prod. Res. Grp., L.L.C. v.*

11   *NCT Grp., Inc.*, 863 A.2d 772, 799 (Del. Ch. 2004).  And the possibility that some or all of

12   Plaintiff's claims could have been characterized as "due care" claims could have meant those

13   claims were subject to dismissal well ahead of a trial.  Rifkin Decl., ¶34.

14   Faced with the risk of no recovery, the Settlement guarantees substantial benefits for

15   Finisar with the implementation of valuable corporate governance reforms that could not have

16   been obtained if the Action proceeded to trial.  *Id.*, ¶35.  As the U.S. Court of Appeals for the

17   Fifth Circuit observed:

18   > Where, as here, the derivative suit is largely an attack on past corporate
19   > management practices, as well as on some present officers and directors, the
     > dollar amount of a possible judgment, which is essentially the sole goal in the
20   > class action damage suit, is not the sole, and may well not be the most important
     > matter to be considered, for the effects of the suit on the functioning of the
21   > corporation may have a substantially greater economic impact on it, both long-
     > and short-term, than the dollar amount of any likely judgment in its favor in the
22   > particular action.

23   *Maher v. Zapata Corp.*, 714 F.2d 436, 461 (5th Cir. 1983).  Accordingly, the Settlement is likely

24   the best possible result and provides a substantial benefit to the Company that may not have been

25   achieved through a trial and resulting appeals.  Rifkin Decl., ¶36.

26

27

28

- 13 -

**C.     The Complexity, Expense, and Likely Duration of Continued Litigation Supports Approval of the Settlement**

Another factor weighing in favor of the Settlement is the complexity, expense, and likely duration of the litigation. *Officers for Justice*, 688 F.2d at 625; *Cohn v. Nelson*, 375 F. Supp. 2d 844, 859 (E.D. Mo. 2005). Shareholder derivative actions are notoriously complicated actions that involve complex legal and factual issues that can be litigated to a conclusion on the merits only at great expense over an extended period of time. *Pac. Enters.*, 47 F.3d at 378.

If not for this Settlement, the Action would have been fiercely contested by the Parties. Rifkin Decl., ¶38. And continued litigation would be complex, costly, and of substantial duration. *Id.* Document discovery would need to be completed, depositions would have to be taken, experts would need to be designated and expert discovery conducted, Defendants' anticipated motions dismiss and subsequent motions for summary judgment would have to be briefed and argued, and a trial could occupy attorneys on both sides and the Court for weeks or months. *Id.* And any judgment favorable to Plaintiff would likely be the subject of post-trial motions and appeals, which would prolong the case for years with the ultimate outcome uncertain. *Id.*

The Settlement obviates this expenditure of further time and expenses, and favorably resolves the Action in the best interests of Finisar, permitting the Company to direct its full attention to business. *Id.*, ¶39. Thus, the prospect of continued, protracted, expensive, and uncertain litigation strongly supports approval of the Settlement, which provides immediate and substantial benefits to Finisar and its shareholders.

**D.     The Settlement Was Negotiated by the Parties with a Thorough Understanding of the Strengths and Weaknesses of the Parties' Respective Positions**

The stage of the proceedings and discovery is another factor which courts consider in approving a settlement. *Officers for Justice*, 688 F.2d at 625; *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 617 (N.D. Cal. 1979). "This factor requires the Court to evaluate whether 'the parties have sufficient information to make an informed decision about settlement.'" *OSI Systems*, 2017

- 14 -

WL 5642304, at *4.  Through Plaintiff's Counsel's substantial efforts, they were able to credibly evaluate the Action and the propriety of settling at this stage.  Rifkin Decl., ¶40.  Over the last several years, Plaintiff's Counsel has conducted an extensive investigation of the allegations asserted in the Action, which included: (i) reviewing Finisar's press releases, public statements, SEC filings, and securities analysts' reports and advisories about the Company; (ii) reviewing related media reports about the Company; (iii) researching applicable law with respect to the claims alleged in the Action and potential defenses thereto; (iv) preparing and filing derivative complaints; (v) conducting damages analyses; (vi) reviewing and analyzing relevant documents in the Securities Action and evaluating the merits of, and the defendants' potential liability in connection with, the Securities Action; (vii) briefing and arguing Defendants' Motion to Dismiss; (viii) sending the Inspection Demand to the Company to obtain internal books and records regarding the alleged wrongdoing, and commencing negotiations with counsel regarding the Inspection Demand; and (ix) negotiating this Settlement with Defendants, including researching corporate governance best practices and negotiating the Reforms.  Stip., §II; Rifkin Decl., ¶40.

Plaintiff's Counsel's thorough investigation, which included counsel's extensive experience in litigating complex derivative actions, provided Plaintiff with a clear picture of the strengths and weaknesses of the Action.  Rifkin Decl., ¶41.  Having enough information to properly evaluate the claims and defenses, Plaintiff has resolved the Action on a highly favorable basis to Finisar and its shareholders.  *Id.*

### E.   The Experience and Views of Counsel Favor Approval

Significant weight should be attributed to the belief of experienced counsel that settlement is in the best interest of the Company.  *Officers for Justice*, 688 F.2d at 625.  As set forth above, the Settlement is the product of hard-fought, arm's-length negotiations by counsel with a comprehensive understanding of the relevant facts and law and the relative strengths and weaknesses of the claims and defenses.  Rifkin Decl., ¶42.  Plaintiff's Counsel is highly experienced in shareholder derivative litigation, has litigated scores of shareholder derivative actions to successful resolution, and is nationally recognized as a leader in the field of

- 15 -

1   shareholder rights litigation.  *Id*., ¶42 & Exhibit A.  Plaintiff's Counsel used its expertise to

2   effectively and efficiently prosecute the Action and obtain substantial benefits for Finisar and its

3   shareholders.   *Id*., ¶42.   Thus, counsel's well-informed recommendations strongly support

4   approval of the Settlement.

5   **V.   THE SEPARATELY NEGOTIATED ATTORNEYS' FEES AND EXPENSES**
    **SHOULD BE APPROVED**

6

7        Plaintiff's Counsel's efforts in prosecuting the Actions on behalf of the Company and

8   negotiating the Settlement have conferred substantial benefits upon Finisar.   In light of the

9   substantial benefits achieved, the Individual Defendants have agreed to cause their insurers to

10  pay $190,000 for Plaintiff's Counsel's attorneys' fees and expenses, subject to Court approval.

11  Stip., ¶4.1.

12       **A.       Unopposed Fees Negotiated at Arm's-Length Are Favored**

13       The U.S. Supreme Court has endorsed this type of consensual resolution of attorneys'

14  fees issues as the ideal toward which litigants should strive.  *Hensley v. Eckerhart*, 461 U.S. 424,

15  437 (1983) ("A request for attorney's fees should not result in a second major litigation.  Ideally,

16  of course, litigants will settle the amount of a fee.").   Applying these principles to derivative

17  settlements, courts have approved separately negotiated attorneys' fees provisions and deferred to

18  corporate directors' business judgment as to the amount of attorneys' fees to be paid to plaintiffs'

19  counsel based upon the substantial benefits conferred upon the corporation.  *See, e.g*., *City of*

20  *Westland Police & Fire Ret. Sys. v. Sonic Sols.*, No. C 07-0511-CW, slip op., ¶¶5, 9 (N.D. Cal.

21  Apr. 8, 2010) (approving attorneys' fee provision separately negotiated by independent

22  directors), Rifkin Decl., Ex. B.

23       Here, the Settling Parties negotiated the Fee and Expense Amount after the principal

24  terms of the Settlement were agreed upon, with the assistance of the Mediator.  Rifkin Decl.,

25  ¶45.  The Settling Parties' negotiations were based upon a knowledgeable analysis of what an

26  appropriate fee would be for the benefits achieved and the fees awarded in similar situations.  *Id*.

27  Plaintiff's Counsel negotiated with their adversaries, who are attorneys employed by one of the

28

- 16 -

1    most respected firms in the country, have litigated complex shareholder actions for many years,

2    and know the applicable law pertaining to fee awards.  *Id.*  In such circumstances, the end result

3    of those negotiations—reflecting all Settling Parties' experiences as to what is appropriate—is

4    entitled to a great deal of judicial weight.  *See Apple*, 2008 WL 4820784, at *3 (recognizing that

5    the participation of a mediator and "involvement of multiple counsel from different firms

6    suggests a lack of collusion," and that a "court should refrain from substituting its own value for

7    a properly bargained-for agreement").

8          **B.    The Fee and Expense Amount Is Fair and Reasonable in Light of the
           Substantial Benefits Obtained**

9

10         Under the "substantial benefit" doctrine, counsel who prosecute a derivative action that

11   confers benefits on the corporation are entitled to an award of attorneys' fees and costs.  *Mills*,

12   396 U.S. at 395-96 ("a corporation may receive a 'substantial benefit' from a [stockholders']

13   action], justifying an award of counsel fees, regardless of whether the benefit is pecuniary in

14   nature," and "regardless of the relief granted, private stockholders' actions of this sort 'involve

15   corporate therapeutics,' and furnish a benefit to all shareholders ....").  Indeed, "courts

16   consistently have approved attorneys' fees and expenses in shareholder actions where the

17   plaintiffs' efforts resulted in significant corporate governance reforms but no monetary relief."  *In*

18   *re Rambus Inc. Derivative Litig.*, No. C 06-3513 JF (HRL), 2009 WL 166689, at *3 (N.D. Cal.

19   Jan. 20, 2009).  And courts across the country have placed a significant value upon nonmonetary

20   benefits, involving corporate governance therapeutics.  *See, e.g.*, *In re Google Inc. S'holder*

21   *Derivative Litig.*, No. CV-11-0448-PJH, 2015 WL 12990195, at *1-2 (N.D. Cal. Jan. 21, 2015)

22   (awarding $9.9 million fee in settlement exclusively involving corporate governance

23   enhancements); *Unite Nat'l*, 2005 WL 2877899, at *5 (awarding $9.2 million fee based on "the

24   great benefit conferred upon [the company] as a result of the new corporate governance

25   principles provided for in the settlement agreement").

26         As addressed in Section IV.A., *supra*, the Settlement achieved by Plaintiff's Counsel

27   provides for the implementation of comprehensive corporate governance reforms that will

28

1   prevent and deter recurrence of the alleged misconduct, including significant safeguards and

2   controls in the event the Acquisition becomes effective. *See* Rifkin Decl., ¶47. Although

3   difficult to quantify, the therapeutic value of the Reforms and the Reforms' positive effect on the

4   Company's intrinsic value are substantial. *Id.*; *see also Maher*, 714 F.2d at 461 ("effects of the

5   suit on the functioning of the corporation may have a substantially greater economic impact on it,

6   both long- and short-term, than the dollar amount of any likely judgment").

7        These substantial benefits warrant the requested Fee and Expense Amount, which is

8   consistent with fees awarded in derivative settlements that achieved comparable, nonmonetary

9   benefits. *See In re Basin Water, Inc. Derivative Litig..*, Case No. CIVRS800870, slip op. (Cal.

10   Super. Ct.–San Bernardino Cty. Apr. 14, 2010) (awarding $410,000 in fees for corporate

11   governance reforms that enhanced the company's revenue recognition policy, insider trading

12   policy, disclosure controls, and duties of the non-executive chairman), Rifkin Decl., Ex. C;

13   *Gould v. Cederoth, et al.*, Case No. 1:13-cv-2145, slip op. (N.D. Ill. Feb. 15, 2017) (awarding

14   approximately $525,000 in fees for corporate governance reforms that enhanced board

15   independence, disclosure controls, and information flow between the board and other corporate

16   officers and departments, and increased oversight over the company's risk management and

17   remediation efforts), Rifkin Decl., Ex. D; *In re China Green Agriculture, Inc. Derivative*

18   *S'holder Litig.*, Lead Case No. 10 OC 00563 1B, slip op. (Nev. First Jud. Dist. Mar. 30, 2012)

19   (awarding $650,000 in fees for corporate governance reforms that enhanced the company's

20   compliance efforts and disclosure controls and provided for formal training to the finance team

21   and regular reporting to the board), Rifkin Decl., Ex. E; *The Port Authority of Allegheny County*

22   *Retirement and Disability Allowance Plan for Employees Represented by Local 85 of the*

23   *Amalgamated Transit Union v. Smith, et al.*, Case No. 3:08-cv-02046-SI, slip op. (N.D. Cal. Jul.

24   14, 2011) (awarding approximately $750,000 in fees for corporate governance reforms that

25   enhanced board independence and oversight, among other things, but did not include some of the

26   valuable reforms achieved here, including significant oversight over the Company's public

27

28

disclosures and reporting requirements regarding the Company's core products), Rifkin Decl., Ex. F.

There is no question that the proposed Settlement and the Reforms are the direct result of Plaintiff's Counsel's vigorous efforts and provide substantial benefits to Finisar.   Stip., ¶2.1 ("Finisar acknowledges and agrees that the corporate governance reforms … are significant and confer substantial benefits upon Finisar and its shareholders. Finisar and the Individual Defendants also acknowledge that the prosecution and settlement of the Action was the sole factor in Finisar's agreement to adopt and/or implement the corporate governance reforms …."). Accordingly, the Fee and Expense Amount negotiated by Finisar, with the aid of an experienced Mediator, and approved by the independent directors, should be approved.

### C. A Lodestar Cross-Check Supports the Fairness and Reasonableness of the Fee and Expense Amount

While Plaintiff's Counsel's fee request is based on the substantial benefits achieved, the Court may look to Plaintiff's Counsel's collective "lodestar" as a cross-check for assessing the reasonableness of the Fee and Expense Amount.  *OSI Systems*, 2017 WL 5642304 at *5.   In *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002), the Ninth Circuit approved the lodestar method as a "cross-check" against a percentage award and noted that "courts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases."  *Id*. at 1051-52; *see also id.* at Appendix & n.6 (listing lodestar multipliers for twenty-four settlements averaging 3.28).  Likewise, courts approve positive multipliers to lodestar in derivative cases settled on the basis of valuable governance reforms, noting factors such as the benefits achieved and the risk of litigating on a contingent basis.  *See, e.g.*, *Cohn*, 375 F. Supp. 2d at 862 (approving $2.25 million fee in corporate governance derivative settlement, which equated to a 2.9 multiplier, and noting that "[i]n shareholder litigation, courts typically apply a multiplier of 3 to 5").

Here, Plaintiff's Counsel spent a total of 952.75 hours in connection with litigating the Action through the date the Stipulation of Settlement was executed.  *See* Rifkin Decl., ¶¶50, 56

1   (providing detail regarding the specific work done in connection with this litigation).   By

2   multiplying the number of hours reasonably worked by the reasonable normal hourly rate of

3   counsel, Plaintiff's Counsel's efforts amount to a total, collective lodestar in the Action of

4   $407,302.50.  *Id.*, ¶54.  Plaintiff's Counsel also expended unreimbursed litigation costs totaling

5   approximately $7,712.80.  *Id.*, ¶¶51, 61.  The Fee and Expense Amount therefore equates to a

6   negative lodestar multiplier of 0.47.  *Id.*, ¶52.  This multiplier is unquestionably reasonable,

7   especially given the substantial benefits achieved, and is well below the positive multiplier

8   typically applied in other securities and derivative litigation.  *See Vizcaino*, 290 F.3d at 1051-52,

9   Appendix & n.6.

10          **D.      The Service Award Is Reasonable**

11          Plaintiff respectfully requests that the Court approve a service award of $2,000, to be paid

12  from the amount of fees awarded by the Court, in recognition of the substantial benefits that

13  Plaintiff has helped create for Finisar.  Stip., ¶4.2; *see OSI Systems,* 2017 WL 5642304, at *5

14  (awarding a $5,000 incentive award and finding that "'[n]amed plaintiffs … are eligible for

15  reasonable incentive payments'" and "[a]n incentive payment to come from the attorneys' fees

16  awarded to plaintiff's counsel need not be subject to intensive scrutiny, as the interests of the

17  corporation, the public, and the defendants are not directly affected.'").  Here, the named Plaintiff

18  has devoted time and effort to initiating and diligently supervising this Action since before it was

19  filed in 2012.  Over the past seven years, Plaintiff has overseen the conduct of this litigation

20  through numerous communications with counsel.  Plaintiff also willingly undertook certain

21  responsibilities that go along with litigating a representative action on behalf of a company,

22  including maintaining his ownership in Finisar stock in order to maintain standing to pursue the

23  derivative claims on behalf of the Company.  *See* Rifkin Decl., ¶65.  The modest service award,

24  to be deducted from the fees awarded, should therefore be approved.

25

26

27

28

1  **VI.    CONCLUSION**

2         Plaintiff respectfully submits that the Settlement is fair, reasonable, and adequate, confers

3  substantial benefits on Finisar through the adoption of valuable corporate governance changes,

4  and should be approved in its entirety.

5  DATED: June 6, 2019                                Respectfully submitted,

6
                                                     ROBBINS ARROYO LLP
7
8                                                    *s/ Ashley R. Rifkin*
                                                     ASHLEY R. RIFKIN
9
                                                     BRIAN J. ROBBINS
10                                                   KEVIN A. SEELY
                                                     ASHLEY R. RIFKIN
11                                                   STEVEN M. McKANY
12                                                   5040 Shoreham Place
                                                     San Diego, CA 92122
13                                                   Telephone: (619) 525-3990
                                                     Facsimile: (619) 525-3991
14                                                   brobbins@robbinsarroyo.com
15                                                   kseely@robbinsarroyo.com
                                                     arifkin@robbinsarroyo.com
16                                                   smckany@robbinsarroyo.com

17                                                   *Attorneys for Plaintiff*

18

19

20

21

22

23

24

25

26
   1357913
27

28
                                          - 21 -
   NOTICE OF MOT. AND UNOPPOSED MOT. FOR FINAL APPROVAL OF          CASE NO. C-12-02268-EJD
   DERIVATIVE SETTLEMENT AND MEMO. IN SUPPORT THEREOF